FARMERS' BANK & TRUST COMPANY *v.* BOSHEARS.

Opinion delivered May 23, 1921.

1. BANKS AND BANKING—RECEIVING DEPOSIT AFTER BANKING HOURS. —Where there was testimony tending to prove that it was the custom of the employees of a bank to receive deposits after the usual banking hours for the purpose of accommodating belated customers, it was not error to submit to the jury the question whether the bank was liable for a deposit so made.

2. BANKS AND BANKING—DUTY OF DEPOSITOR TO CHECK UP ACCOUNT. —While no rule can be laid down that will cover every transaction between a bank and its depositors, the latter's duty to make objection to the statement of his account is discharged when he

exercises such diligence as is required by the circumstances of the particular case, including the relations of the parties and the established or known usages of the banking business.

3. BANKS AND BANKING—REASONABLE TIME FOR OBJECTING TO STATEMENT.—In an action against a bank to recover a deposit, which the bank denied having received, whether the plaintiff made objection within reasonable time to the statement furnished by the bank, not showing the deposit, *held* for the jury.

4. BANKS AND BANKING—FINDING OF DEPOSIT MADE.—In an action against a bank by a depositor to recover a deposit claimed to have been made, evidence *held* to sustain finding that such deposit was made.

Appeal from Mississippi Circuit Court, Chickasawba District; *R. H. Dudley,* Judge; affirmed.

*Davis, Costen & Harrison,* for appellant.

The court should have given defendant's requested instruction No. 1, and also have given requested instruction No. 5 without modification. The proof establishes a conclusive case of estoppel. The undisputed evidence shows that the money was received by the bank's employees, if at all, after banking hours, when there was no officer to receive such deposit.

Appellee received and receipted for two statements of the bank with full knowledge that if no error was reported within ten days the account would be considered correct. He made no complaint and is estopped. 126 Ark. 266. The deposit was made, if at all, after banking hours. The bank is not responsible unless the deposit is made during banking hours. 7 C. J., p. 637, §§ 318-19; 1 Morse on Banks, etc. (5 ed.), pp. 9-381. The evidence of Mr. Gay was not sufficient to establish a custom of the bank to receive deposits after banking hours. 17 C. J. 522, § 91; *Ib.* 524, § 92.

*A. G. Little* and *Arthur L. Adams,* for appellee.

Appellant's contentions for a directed verdict are not sustained by the law or the evidence. No estoppel is shown by the evidence. On appeal the evidence should be given its strongest probative force in favor of appellee. 141 Ark. 617-24; 135 *Id.* 466-70.

The doctrine of estoppel and account stated is an artificial one, growing out of the law merchant.  It is highly penal and should be liberally construed with reference to those against whom it is invoked.  57 Miss. 51; 34 Am. Rep. 435; 42 N. H. 158; 27 L. R. A. 820 (note). Ten days can not be arbitrarily fixed as sufficient time under all circumstances for a bank depositor to examine his pass book after it has been balanced and returned to him with canceled vouchers.  103 Mo. App. 613; 77 S. W. 1002.

Failure to examine the pass book within a reasonable time after it is balanced will not estop a depositor from subsequently showing the incorrectness of the statement, though by his delay he may be compelled to assume the burden of overcoming the presumption arising of its correctness.  147 Ill. App. 193; 60 App. Div. 241; 70 N. Y. S. 246; 187 Mo. App. 483; Michie on Banks, etc., § 133.

A reasonable time is to be determined by the situation of the parties and nature of the business.  It would be unreasonable to apply the rule applicable to merchants to the mechanic or farmer.  12 Barbour 487; Michie on Banks, etc., § 138; Bald. C. C. 539.  The cases cited for appellant, 126 Ark. 266 and 117 U. S. 96, are not in point. See 141 Ark. 414.  There was ample testimony here to take the case to a jury.  A usage, being a matter of fact, may be proved as any other fact.  17 C. J. 524, § 92.

The finding of the jury has established the usage or custom of the appellant to receive deposits after the usual banking hours, and appellant's case falls.  Established usage is binding on a bank.  57 N. Y. 131; 1 Head 162; 17 C. J. 479-80, § 42.  See, also, 7 Wis. 1; 73 Am. Dec. 381; 7 C. J. 637; 21 L. R. A. 440 and note.

Taken altogether, the instructions state the law and there is no error.  97 Ark. 358-363; 98 *Id.* 211, 219; 100 *Id.* 437-441.

McCULLOCH, C. J.  Appellant is a banking corporation engaged in business in the city of Blytheville, in this

State, and during the autumn of the year 1919 appellee, a farmer living eight or ten miles out in the country from Blytheville, was one of its depositors. He claimed that he made a deposit of $250 on October 17, 1919, which does not appear to his credit, and on the refusal of the bank to place it to his credit he instituted this action to recover that sum.

The issues in the case are whether the amount was deposited by appellee, as claimed by him; whether the deposit was received by an employee of the bank, if at all, at such time as he was authorized to receive dedospits; and whether appellee is precluded from recovery of the sum by his failure, within apt time, to make objection to the account rendered him by the bank.

Appellee was a tenant on the farm of a Mr. Gay, who was formerly the president of appellant bank, and at the time of the transaction in controversy was one of its directors. According to appellee's testimony, he brought cotton to Blytheville on October 17, 1919, and after selling it he and Mr. Gay had a settlement of their accounts, and he paid Mr. Gray a small balance due him, and, having the sum of $250 left out of the proceeds of the cotton, he deposited it in appellant bank. He described the method of deposit as follows: That he counted out the money to Mr. Gay, who made out a deposit slip and handed it to Mr. Cheatham, the assistant cashier, who accepted the money and placed the letters O. K. on the deposit slip with his initials attached. This was after the usual closing time of the bank, but the assistant cashier was in the bank at the time and received this deposit. Appellee testified further that he was accustomed to making deposits in this way after the usual banking hours for the reason that he came a long distance with his cotton, and did not usually sell it until after the bank closed. There was other testimony tending to show that it was the custom of the bank to receive deposits after the usual banking hours.

The testimony adduced by appellant tended to show that the money was never received by the bank or any of

its employees. Cheatham testified that he had no recollection of the deposit, and it is shown by his testimony and that of other employees that the deposit had never been entered on the books of the bank, and that the amount of funds in the bank did not indicate that they exceeded the amount entered on the books. Mr. Cheatham also testified that the initials on the deposit slip held by appellee were not in his handwriting.

On October 21 appellant sent to appellee, by mail, a statement of his account which did not show this deposit. The statement concluded with the following notice:

"This statement is furnished you instead of balancing your pass book. It saves you the trouble of bringing your pass book to the bank and waiting for it to be balanced. These statements will be found very convenient to check up and file. All items are credited subject to final payment. Use your pass book only as a receipt book when making deposits."

Another statement was furnished in like manner on December 15, 1919. There is a conflict in the testimony as to when appellee made objection to the bank that his account was not correctly set forth in the statement furnished to him. He testified that he made the discovery in three or four days after he received the statement by checking up the account with his deposit slips at home; that because of the fact that Mr. Gay was one of the directors of the bank he had made the deposit through the latter, and waited to see him before making his protest to the bank, and that it was several weeks before he could find Mr. Gay in town. He testified that at the first opportunity he presented the matter to Mr. Gay, and that they went to see the cashier of the bank, and presented the deposit slip showing the deposit of this amount on the date mentioned.

The issues were properly submitted to the jury, and the court, among other instructions, gave the following: "Even though you may believe from the evidence that

the deposit in question was received by the officers of the bank, if you further find and believe from the evidence that thereafter the plaintiff Boshears received a statement or statements from the bank showing the amount of the deposits made by him and the charges against his account, as shown by the vouchers, and upon receiving such statement or statements he did not in a reasonable time thereafter notify the bank of the errors here complained of and that such failure upon his part to so notify the bank occasioned injury to the bank, you will find for the defendant.''

The contention of appellant's counsel is that the court should have given a peremptory instruction, for the reason that the undisputed evidence shows that the money was received by the bank's employees, if at all, after banking hours when there was no officer to receive such deposit and also because the undisputed evidence shows that appellant waited an unreasonable length of time before he made objection to the statement sent to him omitting this deposit. We think the contention of counsel in both respects is unfounded. There is testimony tending to show that it was the custom of the employees of the bank to receive deposits in the bank after the usual banking hours for the purpose of accommodating belated customers. The testimony also warranted a submission of the issue as to whether or not the objection made by appellee to the statement of his account was within a reasonable time. The rule approved by this court in several cases was stated by the Supreme Court of the United States in *Leather Manufacturers' National Bank* v. *Morgan,* 117 U. S. 96, as follows: ''While no rule can be laid down that will cover every transaction between a bank and its depositors, it is sufficient to say that the latter's duty is discharged when he exercises such diligence as is required by the circumstances of the particular case, including the relations of the parties, and the established or known usages of banking business.''

*Citizens Bank & Trust Co.* v. *Hinkle,* 126 Ark. 266; *Bank of Black Rock* v. *B. Johnson & Son Tie Co.,* 148 Ark. 11.

Considering the circumstances under which the alleged deposit was made and the circumstances under which appellee was placed when he received the notice omitting this deposit, we think that the trial jury was warranted in drawing the inference that appellant proceeded with proper diligence in presenting his protest to the bank, and that it was made within a reasonable time, considering all those circumstances.

The testimony was conflicting as to whether or not the deposit was actually made, but there was sufficient evidence to warrant the jury in finding that appellee deposited the sum mentioned in the manner which he described in his testimony.

Judgment is therefore affirmed.